UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 09 CR 332 |
| TONY SPARKMAN, | ) ) ) | Honorable Judge Gottschall |
| Defendant. | ) | |

**MOTION FOR JUDGMENT OF ACQUITTAL
NOTWITHSTANDING THE VERDICT, OR
ALTERNATIVELY, MOTION FOR NEW TRIAL**

The defendant, TONY SPARKMAN ("Sparkman"), by his court appointed attorney, Eugene Steingold, moves this Honorable Court for the entry of an order granting him a judgment of acquittal notwithstanding the verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, alternatively, granting him a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In support hereof, defendant Sparkman states the following:

**BRIEF HISTORY OF THE CASE**

Sparkman was one of six defendants arrested on April 9, 2009, and charged in a two-count indictment with drug conspiracy and possession with intent to distribute cocaine. Eventually, Sparkman, along with ten others, was charged in a thirteen-count third superseding indictment. He was charged in eight counts. In count One he was charged with racketeering conspiracy; in count Four he was charged with possession of cocaine with intent to distribute; in count Seven he was charged with the kidnapping of Pedro Avila and family; in count Eight, he was charged with use of a weapon during that kidnapping; in count Ten he was charged with the kidnapping of Jose Carranza and friend; in count Eleven he was charged with use of a weapon

1

during that kidnapping; in count Twelve, he was charged with attempted possession of cocaine; and in count Thirteen, he was charged with drug conspiracy.

Sparkman is focusing on most, but not all, of the arguments that are individual to his case. Sparkman is seeking to adopt any other pertinent arguments in support of a Rule 29 and Rule 33 disposition that may be made by his codefendants.

Sparkman was one of the six defendants who proceeded to trial before the Honorable Judge Gottschall, sitting with a jury. On January 31, 2012 the jury returned a verdict of guilty as to Sparkman on all counts except for Count 4, in the Indictment.

Sparkman maintains that that the evidence adduced at trial with respect to Counts One, Seven, Eight, Ten, Eleven, Twelve and Thirteen, of the indictment, taken in the light most favorable to the prosecution, failed to prove his guilt beyond a reasonable doubt.

## DISCUSSION

According to the government, Hector Uriarte brought Tony Sparkman into Rodriguez' crew to help carry out the activities of the crew no later than the Summer of 2006. At trial, George Lopez ("Lopez") and Andres Flores ("Flores") testified that they knew Sparkman, known as "Black", as a member of City Knights, a neighborhood gang, since approximately 1999—when Sparkman was 13 years old. Saul Rodriguez's ("Rodriguez") testimony showed that he had minimal contact with Sparkman. Rodriguez met "Black" on several occasions after Fares Umar went to prison, after August 17, 2006. Besides law enforcement agents, Flores and Lopez were the only witnesses who testified about Sparkman's involvement in the events of April 9, 2009. Flores, who began his involvement with Rodriguez and his organization in 2000, was the only witness who testified as to Sparkman's alleged participation in all acts charged in the third superseding indictment. Pedro Avila ("Avila") testified about Sparkman's involvement

2

in the October 2007 kidnapping and identified Sparkman's photograph. However, Avila did not make an in-court identification. Rodriguez also testified about Sparkman's alleged involvement in the "Avila" and "Vega" kidnappings—several instances that Rodriguez allegedly had personal contact with Sparkman.

## COUNT 1

Count 1 alleged that Sparkman participated in a racketeering conspiracy in violation of 18 USC §1962(d). With respect to Sparkman the indictment alleged that

> [T]he Rodriguez Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise…

that

> TONY SPARKMAN served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances…

that

> [I]t was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise

and

> [T]he robberies and kidnappings committed by members and associates of the enterprise in the conduct of the affairs of the enterprise included, specifically:
>
> (6) The October 2007 kidnapping and robbery of Pedro Avila, Pedro Avila's wife, and their five children, by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown, resulting in the possession of approximately $2,000 by members of the enterprise.
>
> (7) The 2008 kidnapping and robbery of Jose Carranza and Friend by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, TONY SPARKMAN, and

3

others known and unknown, resulting the possession of approximately $1,500 by members of the enterprise.

With respect to possession of narcotics, as part of RICO conspiracy, the indictment charged

> [T]he Summer 2006 possession with intent to distribute 5 kilograms or more of mixtures and substances containing cocaine by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown…
>
> [T]he April 9, 2009 attempted possession with intent to distribute 5 kilograms or more of mixtures and substances containing cocaine SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown…

With respect to the pattern of racketeering activity, the government presented at trial evidence of the following acts: (1) the May 2006 kidnapping of men at a tractor trailer lot; (2) the Summer 2006 theft of 300 kilograms of cocaine from a home in Joliet, Illinois; (3) the Summer 2006 kidnapping of Lou Vega and Francisco Pizarro; (4) the October 20, 2007 kidnapping of Pedro Avila and his family; (5) the 2008 kidnapping of Jose Carranza and his friend; (6) the 2008 kidnapping of Rafael Montano, Beronica Montano, and their child; (7) the April 9, 2009 attempted possession of 600 kilograms of cocaine; and (8) the 2006 to April 9, 2009 conspiracy to possess and distribute cocaine.

Sparkman was found not guilty of the "Summer 2006 theft of 300 kilograms of cocaine from a home in Joliet, Illinois." Thus, viewed in the light most favorable to the government, the jury did find that Sparkman did not meet Rodriguez until after Fares Umar went to prison, or after August 17, 2006. It would follow that Sparkman did not participate in the first three events mentioned above.

1. There was no evidence presented that Sparkman was a member of "Rodriguez Enterprise".

4

While Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Fares Umar, Andres Torres, Pedro Victoria, and others may have been part of the "Rodriguez Enterprise", there was no evidence introduced at trial that Sparkman was a member of or associated with that enterprise. At times relevant to Sparkman, all of the operative members of Rodriguez Enterprise were Hispanic. Sparkman is Afro-American, an outsider. The evidence showed that Sparkman was a member of the City Knights and that he knew Hector Uriarte and Andres Flores through his association with City Knights. There was no evidence that activities of City Knights were related to activities of Rodriguez Enterprise. Sparkman had no relationship with Rodriguez or members of his enterprise. Rodriguez testified that he had met Sparkman on several occasions. However, Rodriguez never had any discussions with Sparkman; there was no evidence of any planning, agreements, or mention of compensation involving Sparkman. Any communications with Sparkman would have been made through Hector Uriarte, who did not testify.

2. The Government failed to prove that Sparkman knowingly conspired to conduct or participate in the conduct of the affairs of the Rodriguez Enterprise through a pattern of racketeering activity.

In U.S. v. Shamah, 624 F. 3d 449 (7th Cir. 2010), citing Reves v. Ernst & Young, the Supreme Court defined the meaning of "participate" and "to conduct" for § 1962(c), the substantive offense at issue here. 507 U.S. 170, 177-79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The Court held that although liability was not limited to those in the "upper management" of an enterprise, it must be shown that the defendant participated in the "operation or management" of the enterprise's affairs. Id. at 184-85, 113 S.Ct. 1163; United States v. Cummings, 395 F.3d 392, 397 (7th Cir.2005). To show participation, the Court stated that the person charged must have

had "some part in directing those affairs." Reves, 507 U.S. at 179, 113 S.Ct. 1163 (emphasis in original); ("Mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise.").

Shamah, a Chicago police officer, was charged and convicted of RICO conspiracy. Shamah and his partner were stealing money and drugs from drug dealers. Shamah argued that he was not an operator or manager of the Chicago Police Department. Appellate court found that for purposes of RICO Shamah was an "operator." He had discretion and authority as a police officer to stop, pull over, and arrest people. Because of this discretion and authority, Shamah "operated or managed the integral duties of the police department's daily affairs", thus, he was conducting the affairs of the enterprise.

In United States v. Cummings, 395 F.3d 392, 397 (7th Cir.2005), Cummings' RICO conspiracy conviction was reversed. Brenda Cummings worked in the purchasing department of the Illinois Department of Employment Security ("IDES"). She also had access to IDES's computers and was able to obtain and provide data to debt collectors and skip tracers, earning in excess of $60,000 on a side.

The court in Cummings noted at 398

> In the present case, the IDES was the charged RICO enterprise. The prosecution's theory was that the defendants conspired to participate in the conduct of the IDES's affairs through a pattern of racketeering activity. The charged racketeering activity was bribery — Morris paid Cummings and the others in exchange for the confidential information contained in the IDES database. The defendants candidly concede that their scheme likely violated state bribery and official misconduct laws as well as IDES policies. But defendants argue that the government failed to show that any of the scheme's participants directed or managed the enterprise as *Reves* requires, and thus the evidence cannot support their convictions on the RICO count. We agree. Regardless of which standard of review applies, the record is devoid of evidence that the defendants conspired knowingly

6

to facilitate the activities of anyone to whom § 1962(c) would apply — namely, an operator or manager of the IDES, the charged RICO enterprise.

Similarly here, there was no evidence presented that Sparkman knew of the existence of Rodriguez Enterprise or that he conspired knowingly to facilitate activities of Rodriguez Enterprise. Sparkman was not an operator or a manager. As noted in Shamah, mere participation in the activities of the enterprise is insufficient.

Sparkman's conduct, proven at trial, may have been criminal, but the evidence was not sufficient to prove Sparkman's conduct or participation in the conduct of the affairs of an enterprise. There was no evidence introduced in the course of this two-month trial, which could support a jury finding that Defendant was a participant in the charged racketeering conspiracy. There was specifically a lack of evidence concerning his agreement that two or more racketeering acts be committed, as required by the racketeering conspiracy statute. Thus, the jury verdict of guilty as to Count One should be vacated.

## COUNTS 7 AND 8—PEDRO AVILA KIDNAPPING

With respect to events of October 20, 2007, Flores testified that he brought two guns and that he gave one gun to Jorge Uriarte. He also testified that Sparkman had a battering ram. There was no testimony from Flores that Sparkman had a gun. Avila testified that a black male pointed a gun at him and forced him to go downstairs to the basement. Avila's photo identification of Sparkman was made approximately 2 years after the incident, in December of 2009. Avila was presented a photo-array of six Afro-American individuals, and Avila identified and initialed a photo of Sparkman. Sparkman was never presented or identified in a line up. Avila's opportunity to observe, under the extreme stress of events in October of 2007, was vague and uncertain. Avila was unable to identify Sparkman in open court. Thus, even in a light most favorable to the Government, an identification such as this cannot support a finding of guilt beyond a reasonable

doubt. The jury verdicts as to Counts 7 and 8 should be vacated.

### COUNTS 10 AND 11—CARRANZA KIDNAPPING

Flores was the only witness who testified to Sparkman's alleged participation in this kidnapping. Clearly Carranza would have noticed a presence of a 6' 4", large, Afro-American male. Lack of identification cannot support a finding of guilt beyond a reasonable doubt. The jury verdicts as to Counts 10 and 11 should be vacated.

### COUNT 12—ATTEMPTED POSSESSION OF COCAINE

Neither Rodriguez nor Lopez knew that Sparkman was going to be present on April 9, 2009. There was no evidence presented that Sparkman had any knowledge regarding April 9, 2009 theft. While Sparkman may have known that an illegal activity was to take place, there was no evidence that he personally knew that cocaine or illegal drugs were involved. There was no evidence that he participated in any discussions with respect to the "operation", disposition of contraband, or compensation. The evidence of his involvement was that of a driver of one of the vehicles. The jury verdict as to Count 12 should be vacated.

### COUNT 13—DRUG CONSPIRACY

According to the government Sparkman's participation in the Rodriguez Enterprise included the Summer 2006 theft of cocaine from the home in Joliet, and the April 9, 2009 attempted theft of cocaine from the warehouse in Channahon. However, the jury found Sparkman not guilty of the Summer 2006 theft of cocaine and there was no other evidence presented at trial linking Sparkman to this drug conspiracy. There was no evidence presented that Sparkman bought, sold, or used drugs. The jury verdict as to Count 13 should be vacated.

### CONCLUSION

The evidence at trial did not prove that Defendant Sparkman was associated with or had a part in directing the affairs of the Rodriguez Enterprise or agreed to knowingly facilitate the activities of operators or managers of the Rodriguez Enterprise beyond a reasonable doubt. The evidence did not prove Sparkman's involvement in the charged drug conspiracy or that he knew that illegal drugs were the object of April 9, 2009 incident. The evidence did not prove Sparkman's involvement in the Avila or Carranza kidnappings beyond a reasonable doubt. Therefore, Sparkman's convictions as to all Counts should be vacated and a judgment of acquittal entered, or in alternative a new trial should be granted on all counts.

> Respectfully submitted,
> By:s/ Eugene Steingold
> Eugene Steingold, Attorney for Defendant

CERTIFICATE OF SERVICE

The undersigned Attorney hereby certifies that in accordance with Fed. R. Grim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

DEFENDANT TONY SPARKMAN'S MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL

were served pursuant to the District Court's ECF system as to ECF filers, if any, and were sent by first-class mail on April 2, 2012, to the following non ECF filers:

> By:s/ Eugene Steingold
> Eugene Steingold
> Attorney for Defendant
> 111 West Washington Street
> Suite 1051
> Chicago IL 60602
> (312) 726-1060